Rubey v. Shain, et al.

WEB M. RUBEY, Respondent, *vs.* ED.C. SHAIN, *et al.*, Appellants.

1. *County Court—Railroads—Subscription before articles filed—Collector, action against.*—A subscription of stock ordered by a County Court to a Railroad Company, before its articles of association have been executed or filed with the Secretary of State, is illegal and void. But where the County Court orders the levy of a tax to meet the subscription, and the collector proceeds to enforce its collection, a tax-payer cannot have his action to recover back the amount so collected from him. His remedy is by proceeding to arrest the execution of such illegal subscription, and the State may, through her legal representatives, arrest the issue of the bonds.

## *Appeal from Macon Circuit Court.*

*W. H. Sears,* for Appellants.

I. The stock having been voted for by the requisite number of resident tax-payers of said Hudson Township, they knowing the objects and purposes of the road, and the bonds having been issued to said road, for the payment of said stock by the County Court, the authorized agents of said township for that purpose ; and it not appearing but that these bonds have got into the hands of innocent purchasers, it would be imposing a hardship on those purchasers, that the law does not sanction, if this action be sustained. (Knox County vs. Aspinwall, 21 How., 539; Flagg vs. City of Palmyra, 33 Mo., 440.)

II. The tax lists showed that the property of the respondent was subject to taxation, and therefore the collector was justified in collecting the tax due. (37 Mo., 280; 47 Mo., 466.)

*W. C. M. Rubey,* for Respondent.

I. When the County Court attempted to make the so-called subscription, nothing had been done towards forming a corporation, excepting the drafting of Articles, and the subscriptions thereto, by eight persons of $200.00 each, making in all sixteen hundred dollars, which was wholly inadequate, (W. S., 296-9, §§ 1, 3) and was void.

NAPTON, Judge, delivered the opinion of the court

This was a suit against the collector of Macon County and his sureties to recover back a tax of fifty dollars paid by

plaintiff on an assessment against his property levied by the County Court, to pay a subscription or interest on a subscription to the St. Louis, Macon & Omaha Air Line R. R. Co. The facts in the case, about which there was no controversy, are these: On the 16th day of December 1868, articles of association, proposing to build a road about ninety miles in length, were signed by eight persons, each subscribing two hundred dollars, forming what was called the St. Louis, Macon & Omaha A. L. R. R. Co.

On the 18th day of the same month, a petition was presented to the County Court, under the act of the 23rd of March 1868, signed by the necessary number of tax-payers of Hudson township, requesting the court to order a vote in said township, as to whether the township would take $40 000 of stock in said company. In June 1869, the vote was taken and the requisite majority was obtained. On the 9th of November 1869, the County Court ordered the subscription, and issued bonds therefor, and in 1871 made a levy of 25 cents on each hundred dollars' worth of property in said township, to pay the interest accrued, and said levy was duly entered on the tax books for the year 1871, and defendant Shain collected the same against the protest of plaintiff.

The articles of association were not executed until the 10th of Nov. 1869, and not filed with the Secretary of State till the 12th of the same month and year. On this state of facts the question is, whether such subscription is valid.

The Constitution (Art. II, Sec. 14) says: "The General Assembly shall not authorize any county, city or town, to become a stock holder in or loan its credit to any company, association or corporation, unless two-thirds of the qualified voters of such county, city or town, at a regular or special election to be held therein shall assent thereto."

The statute (W. S., 305, § 17) says, "it shall be lawful for the County Court of any county, the City Council of any city or the trustees of any incorporated town, to take stock for such county, city or town, or loan its credit to any railroad company, *duly organized under this or any other* law of the State; *provided, &c.*"

The act of 1868, under which the subscription was made, provided that "Whenever twenty-five persons tax-payers and residents in any municipal township for election purposes, in any county of this State, shall petition the County Court of such county setting forth their desire as a township to subscribe to the capital stock of any railroad company in this State, building or proposing to build a railroad into, through or near such township," &c., "a vote shall be ordered," &c."

The company was incorporated under the general law.

That law (W. S., 296, § 1) provided, that five persons or more might make and sign articles of association, in which shall be stated the name of the company, its proposed duration, the points of beginning and ending of the road, its length and the counties through which it was to run, the amount of capital stock, which should not be less than $10-000 for every mile of road constructed or proposed to be constructed. This section then declares that on compliance with the provisions of the third section of the same chapter these articles might be filed in the office of Secretary of State, who was to indorse thereon, the day they were filed, and record them, and *thereupon* the persons named *should be a corporation*, &c.

The third section of the act above referred to prohibited the filing and recording of these articles, until one thousand dollars of stock was subscribed for every mile of road proposed and five per cent. paid thereon in good faith and in cash, and an affidavit was annexed to said articles by three directors to this effect, and that it was intended in good faith to construct and operate the road.

The constitution does not seem to prohibit the legislature from authorizing municipalities to subscribe to corporations *in fieri*, or contemplated ones, since it uses the terms "company, association or corporation," and the word association might well apply to an unincorporated company.

But in regard to railroads the legislature uses more definite language, and undoubtedly limits the power to subscribe to "railroad companies duly organized under some law of the

State," general or special, and the act authorizing township subscription is confined to assistance to some railroad company in this State, and does not in terms authorize a subscription to a mere contemplated corporation.

It is not intended that counties, cities or towns or townships, shall by their subscriptions form the basis on which a future corporation is to be erected—a nucleus around which aid is to be gathered from other quarters to construct roads; but that they may by their subscriptions or loans aid corporations already in existence.

In the case now before the court it will be seen from the statement that this St. Louis, Macon & Omaha Air Line Company had no existence until the 12th of November 1869, that some eight subscribers had formed an association in 1868, in which they agreed to advance altogether sixteen hundred dollars towards this enterprise, but that the articles were never filed in the office of Secretary of State until the 12th of November 1869, for the obvious reason that the stock subscribed was insufficient to meet the requirements of the law. In the mean time and immediately after the first step in the enterprise was taken, the County Court, at the instance of certain tax-payers, ordered a vote in Hudson Township, and the result of that vote being favorable, the court proceeded to subscribe the stock voted on the 9th of November 1869, and on the same day issued the bonds, and on this stock thus subscribed, and that of another township, the three directors proceeded to Jefferson City and filed the articles of association and made the necessary affidavit. In this way the ninety thousand dollars essential to the formation of the corporation, the road being ninety miles long, was raised, and so in fact the two townships and the eight subscribers of two hundred dollars each started the company. This was all done no doubt in good faith, and there is no reason to believe that any evasion of the law was intended; but however unpleasant the duty may be and however disastrous may be the consequences to innocent persons, we are obliged to hold the subscription of the court illegal and void. For it is well settled

that these municipalities cannot subscribe to railroad enterprises unless authorized by law, and the law in this case gave them *no power* to subscribe stock to a corporation which had no existence, and which could only spring into existence by virtue of the stock subscribed.

But the liability of the collector for collecting this tax thus illegally levied by the County Court, presents a more difficult question. To hold a subordinate, ministerial officer responsible for the erroneous opinions and judgments of the judicial tribunal under whose mandate he acts, is not consistent with our views of justice, public policy or expediency. Preventive remedies should be favored, but punitive judgments against innocent parties should not be encouraged. The decisions of this court do not indicate any well defined rules on this subject, though it has been examined in various cases. (Hannibal & St. Joe R. R. vs. Shacklett, 30 Mo., 550; State vs. Shacklett, 30 Mo., 280; Glasgow vs. Rowse, 43 Mo., 479; St. Louis B. & S. Ass'n vs. Lightner, 42 Mo., 421; St. Louis Mut. Life Ins. Co. vs. Charles, 47 Mo., 462; State vs. Dulle, 48 Mo., 282; N. M. R. R. Co. vs. Maguire, 49 Mo., 482.)

The inclination of the court has been, as appears from these decisions, to hold the collector exonerated when the property was liable to taxation and the assessor's book, superintended and sanctioned by the County Court, ordered the collection of the tax. The collector, like the sheriff, in executing a writ is not bound to examine into the legality of the assessment which had been passed upon and determined by the tribunal authorized to examine such questions, and supposed to be competent to decide on them.

He is merely authorized to do what he is ordered to do by his superiors. It may be asked then, what is the remedy in cases where the assessment is illegal, or rather where it is based on an illegal act of the County Court? The answer is that the tax-payer, according to the decision of this court in the case of Newmeyer vs. the Mo. & Miss. R. R. Co., 52 Mo., 81, may arrest the execution of an illegal subscription or other order of the County Court, and as held in the Saline

Co. Case (51 Mo., 350) that the State may through her legal representatives arrest the issue of such bonds.

In the case of the State vs. Sanderson, *ante* p. 203, we have maintained the same position. It is true that no redress has been indicated where the illegal tax has been paid, but would it not be more in accordance with justice and the principles of law, that several hundred or several thousand people, not one of whom ventures to ask the interposition of a court before the collector came around, should suffer the loss of an inconsiderable sum, than that the officer to whom is intrusted the collection of revenue should be compelled to refund to the hundreds or thousands from whom he has collected a tax, the aggregate sum collected on an illegal assessment.

The judgment is reversed on the ground that the collector is not liable. The other judges concur.