## COUNTY OF DAVIESS *v.* HUIDEKOPER.

Where, pursuant to the assent given by two-thirds of the qualified voters of a county in Missouri, at an election therein, stock in a railway company, which afterwards constructed its road through the county, was subscribed for by the county court, and the county exercised its rights as a stockholder, and issued its bonds to pay for the stock, — *Held*, that the bonds are not, in the hands of a *bona fide* holder for value, rendered void by the fact that, at the time of such election, the company was not created according to law.

ERROR to the Circuit Court of the United States for the Western District of Missouri.

The facts are stated in the opinion of the court.

*Mr. Willard P. Hall* for the plaintiff in error.
*Mr. Joseph Shippen, contra.*

MR. JUSTICE HUNT delivered the opinion of the court.

The plaintiff below brought this suit to collect from the County of Daviess, Missouri, the amount of forty-four interest-coupons for $35 each, formerly attached to bonds issued by the county to the Chillicothe and Omaha Railroad Company, to aid in the construction of its railroad. A demurrer to the amended petition was overruled, and final judgment for the amount of the coupons was rendered by the court below, which also certified a division of opinion on points presented.

The questions certified are as follows: —

*First*, Whether the bonds, for the collection of the interest-coupons of which the suit was brought, were issued without due authority of law, and are void in the hands of a *bona fide* purchaser for value, because the railroad company to which said bonds were issued, in payment of capital stock by it subscribed, was not created according to law until subsequent to the favorable vote of the qualified voters and the order of subscription.

*Second*, Whether the former judgment recovered by the plaintiffs in a former suit in this court against the defendant, upon interest-coupons from the same bonds again set forth in this suit, estops the defendant from pleading in bar to the merits herein.

The Constitution of Missouri (1 Wagn. Stat. 62), sect. 14 of art. 11, provides as follows, viz. : —

" The General Assembly shall not authorize any county, city, or town to become a stockholder in, or to loan its credit to, any company, association, or corporation, unless two-thirds of the qualified voters of such county, city, or town, at a regular or special election to be held therein, shall assent thereto."

The General Statutes provide (1 Wagn. Stat. 295) how railroad companies may be formed, and further provide (id. 305) : —

" SECT. 17. It shall be lawful for the county court of any county, the city council of any city, or the trustees of any incorporated town, to take stock for such county, city, or town in, or loan the credit thereof to, any railroad company duly organized under this or any other law of the State : *Provided*, that two-thirds of the qualified voters of such county, city, or town, at a regular or special election to be held therein, shall assent to such subscription."

Having paid his money in good faith for the bonds issued by this county, and the interest becoming payable, it is not unnatural that the holder and owner should demand payment of such interest.  The subscription by the county to the railroad stock, the receipt and holding of the stock by the county, the assent by two-thirds of the qualified voters of the county that such subscription should be made, the actual issuing of the bonds, and the purchase of the same by the plaintiff below, without knowledge of any objection to them, are conceded.

It is said, however, that these things were not done in their proper order; that the vote of the citizens assenting to the subscription was taken before the organization of the railroad company was complete, and that although that act was not under the control or direction of the holder of the bond, but an irregularity of the county, if it is an irregularity, the county is thereby relieved from the payment of its debts, which would otherwise be not only just and honest, but lawful.  This is the point that

is made in the first of the questions presented by the certificate of the judges. The facts on which this branch of the case rests are these: The articles of incorporation of the road in question, which bear date June 18, 1867, contain the statements required by the statute, giving the length of the road, the amount of the capital stock, and the names of the directors, and were subscribed by the subscribers for the amounts indicated. The amount subscribed was not then as large as that required by the statutes of Missouri, to wit, $1,000 per mile for the length of the road. This sum was, however, obtained as early as the eleventh day of July, 1868, when the articles were filed in the office of the secretary of state, and the incorporation became perfect. On the 1st of July, 1869, the county court made its subscription, issued and sold its bonds, and with the proceeds paid for and received the stock. The road was built through the county; and for several years the county levied and collected taxes to pay the interest of the bonds, and did pay the interest for those years.

The precise question now presented has never been decided in this court, but its determination depends upon principles which are well settled. These bonds are securities which pass from hand to hand with the immunity given by the common law to bills of exchange and promissory notes. The persons who execute and deliver them — the officers of the county court in this instance — are the agents of the municipal body authorizing their issue, and not of the persons who purchase or receive them. If these agents exceed their authority as to form, manner, detail, or circumstance, if they execute it in an irregular manner, it is the misfortune of the town or county, and not of the purchaser; the loss must fall on those whom they represent, and not on those who deal with them. There must, indeed, be power, which, if formally and duly exercised, will bind the county or town. No *bona fides* can dispense with this, and no recital can excuse it. Thus, if the constitution or the statute should peremptorily prohibit a municipal body from loaning its credit to or subscribing for stock in a railroad corporation, a subscription or a loan made subsequently to the passage of the act would give no right against the county, although the bond should recite that there was such authority,

and the purchaser should pay full value in the belief of its truth. There is no difficulty in appreciating the distinction stated; and we are now to ascertain whether the error we are considering, assuming it to be one, arises from an irregularity in the exercise of an existing power, or whether there is total want of authority to act.

The case concedes that the question of subscription to the stock of this very company was submitted to the voters of Daviess County, that two-thirds of the qualified voters of that county assented to the making of that subscription, and that the bonds, the coupons from which are here in suit, were issued pursuant to an order of the county court of Daviess County, made under authority of the Constitution and General Statutes of the State of Missouri.

After admitting that it made a contract with this company to take its stock, and not with some other company, and that the contract with this identical company was authorized with the forms and solemnities set forth, and that it received, and, so far as known, has ever since held and enjoyed, and now holds and enjoys, the profits of the stock of this very company issued for such bonds; and also admitting that when the bonds were so issued and delivered by it the incorporation had been completed in form and detail for one year, — can it now be permitted to urge as a defence that such company was not a legally organized corporation when the election was held, and did not become such until after that period?

The Missouri statute already quoted shows that the municipal body, in regard to its privileges, liabilities, and responsibilities as a taker and holder of railroad stock, stands like an individual subscriber. Its eighteenth section is as follows: —

"SECT. 18. Upon the making of such subscription by any county court, city, or town, as provided for in the previous section, such county, city, or town shall thereupon become, like other subscribers to such stock, entitled to the privileges granted, and subject to the liabilities imposed, by this chapter or by the charter of the company in which such subscriptions shall be made; and in order to raise funds to pay the instalments which may be called for from time to time by the board of directors of such railroad, it shall be the duty of the county court, or city council, or trustees of such town

making such subscription, to issue their bonds or levy a special tax upon all property made taxable by law for county purposes, and upon the actual capital that all merchants and grocers and other business men may have invested in business in the county, city, or town to pay such instalments, to be kept apart from other funds, and appropriated to no other purpose than the payment of such subscription; but the total amount of tax levied for railroad purposes in one year in any county, city, or town shall not exceed thirty per cent of the subscription made by such county, city, or town."

It shows, also, that it devolved upon the county court, subject to the question of power before stated, to determine whether a subscription had been made, and to raise money for its payment. This included a determination of the questions whether an assent had been given by the voters, and whether a subscription had in fact been made by the county court. It did determine both of these questions in the affirmative, and so certified in the bonds issued by the same authority, and which are now in suit.

Under these circumstances, the authorities in this court and in the State of Missouri hold that the decision of the voters and the action of the county court in issuing the bonds in question, and their subsequent action in receiving and retaining their benefits, gave validity to the bonds, and that they are now to be taken as valid instruments.

Among these authorities are the following: *Town of Coloma* v. *Eaves*, 92 U. S. 484, 491; *County of Randolph* v. *Post*, 93 id. 502; *County of Leavenworth* v. *Barnes*, 94 id. 70; *Commissioners of Douglass County* v. *Bolles*, id. 104; *Commissioners of Johnson County* v. *Thayer*, id. 631; *County of Cass* v. *Johnson*, 95 id. 360; *City of St. Louis* v. *Shields*, 62 Mo. 247; *Smith* v. *Clark County*, 54 id. 58, 81.

These authorities show that if the county had made a contract with the railroad company in April, 1868, it would not have been permitted, under the circumstances stated, to deny it. But here was no contract. It was a simple indication of the pleasure or wish of the voters of the county that aid should be furnished to this railroad. The statute was intended as a guard against hasty action in this respect, and makes no requi-

sition that the corporation shall be so perfected that a *quo warranto* could not reach it.  If assent is given to a specified aid to a railroad named, we are of the opinion that a perfection of the corporation before the subscription is made and the bonds issued is a compliance with the statute.

*Ruby* v. *Shain* (54 Mo. 207) is cited to the contrary. There are several reasons why that case does not control the one we are considering..

1. The question of the legality of the subscription was never properly reached.  Whether the tax which was levied to pay the county subscription for stock was legal or illegal, it was certain that the collector, who had a warrant for its collection valid on its face, and who was the defendant in that suit, was not liable for enforcing it.  That an officer in such case is protected by his writ, and that to protect himself he need not even produce the evidence of a judgment, was held as long ago as in *Holmes* v. *Newcaster* (12 Johns. (N. Y) 395), and has been so held from that time to the present.  Such, too, is the express holding of the court in *Ruby* v. *Shain*, and an examination of the merits of the case was unnecessary.

2. It differed from the present case in the fact that not only the township vote of assent, but the subscription to the stock and the issuing of the bonds, all occurred before the organization of the company.  The vote was taken in June, 1869, the subscription ordered and the bonds issued on the 9th of November, 1869, while the articles of association were executed on the 10th, and filed with the secretary of state on the 12th of the same month and year.  In the present case, the election was held April 7, 1868, the articles were filed July 14, 1868, the subscription made and the bonds dated July 1, 1869. The organization was complete for a year before the subscription was made.

3. In that case, the subscription was needed to complete the organization.  In this case it was not.  The court, in *Ruby* v. *Shain*, say, " that it is not intended that counties, cities, or towns shall, by their subscription, form the basis on which a future corporation is to be erected, a nucleus around which aid is to be gathered from other quarters, to construct roads, but that they may, by their subscriptions or loans, aid corporations

already in existence." There is a broad difference between the cases where the subscription is actually made and the bonds are issued in fact after the corporation is complete, and where these things are done while the corporation remains incomplete.

Upon the whole matter, we are of the opinion that the case was well decided. The first question certified is answered in the affirmative, and as that disposes of the entire controversy, no attention need be given to the second question.

*Judgment affirmed.*