MOWRER, *Appellant*, v. HELFERSTINE.

**Excessive Tax:** REPLEVIN. Replevin will not lie against the collector of taxes to recover personal property seized to satisfy a tax levied by the proper officer; and it does not matter that the levy is excessive, and that fact is apparent on the face of the tax-book.

*Appeal from Putnam Circuit Court.*—HON. ANDREW ELLISON, Judge.

AFFIRMED.

*Shelton, Hoskinson & Mullins* for appellant.

*Smith & Krauthoff with H. D. Marshall* for respondent.

HENRY, J.—The county court of Putnam county, for the year 1878, levied taxes as follows: County revenue fund thirty cents, county bridge fund twenty cents, county poor fund five cents, county road fund thirty cents, and county railroad fund thirty cents on the $100, and the tax books for that year showed that plaintiff's property was

taxed, in addition to State taxes, in accordance with the
order of the court making the above levy, and that said
several taxes were set out in separate columns, headed re-
spectively, county tax, railroad tax, school tax, road tax,
bridge tax, poor tax. Plaintiff paid all of said taxes except
the bridge and poor tax, for which defendant, collector of
the county, seized a horse colt, the property of plaintiff,
who instituted this suit to recover possession of the colt.

For plaintiff the court gave the following instructions:

1. The levy of taxes for county purposes is and has
been, ever since November 30th, 1875, limited to fifty cents
on the $100 valuation, and such levy for county purposes
includes the opening and improving of public roads, the
support of the poor and the building of bridges, and the
levy by the county court in 1878, of thirty cents for county
tax and thirty cents for road tax on the $100 valuation, ex-
ceeds said limit ten cents on the $100, and the additional
levy by said court in 1878, of five cents for poor tax and
twenty cents for bridge tax on the $100 valuation, and
placed in separate columns on the tax book for 1878, is
unauthorized by law and void on the face of said tax book.

2. The levy made by the county court of a tax of five
cents on the $100 as a poor tax and twenty cents on the
$100 as a bridge tax, was and is unauthorized by law and
void; and said taxes appearing in columns in the tax book
separate and distinct from the column in said tax book set-
ting forth the county revenue tax, and said last named tax
and the road tax in another column, showing a levy of sixty
cents on the $100 valuation—said bridge and poor tax ap-
pear on said tax book to be unauthorized by law.

3. The court declares the law to be that the "poor
tax" and "bridge tax" are, under the statute, included in
and a part of the county revenue tax.

4. The levy made by the county court of Putnam
county of the taxes for the year 1878, for county purposes,
was and is in excess of the amount authorized by law.

The court refused the following asked by plaintiff:

5. Although the facts in this case show that the property in question was seized and taken away from plaintiff by defendant as collector for and on account of certain unpaid taxes; yet if it further appear that said unpaid taxes were and are illegal and unauthorized by law as declared in the foregoing declarations of law, then said tax book and the fact that said illegal taxes were unpaid, did not justify defendant in seizing and taking from plaintiff said property, and the finding should be for the plaintiff.

6. Under the undisputed evidence in this case the plaintiff is entitled to recover.

The court, on its own motion, declared the law as follows:

The court declares the law that if the evidence shows the property in question was seized by the collector for taxes due upon the tax books in his possession, then the said property was taken on process of law against the plaintiff herein, and the finding must be for the defendant.

To the giving of said declaration of law the plaintiff objected and duly excepted.

The court found for the defendant, and rendered judgment in his favor, from which this appeal is prosecuted, and the question is the same as was distinctly presented and expressly decided in *Ruby v. Shane*, 54 Mo. 207.

Appellant's counsel contends that *Henry v. Bell*, 75 Mo. 194, is in conflict with *Ruby v. Shane*. On a careful examination of that case, however, it will be found that a different question from that presented by this record was there passed upon by this court. It appeared that the special tax in question there, was not extended upon the original tax books delivered to the collector of Mt. Pleasant township, but was added by the county clerk in pursuance of an order of the township board. By the act then in force, the tax in question could only be extended by the clerk of the county court, under the supervision of the county court, section 6 of the Township Organization Act providing that " the money necessary to defray the township charges of

each township shall be levied on the taxable property in such township, in the manner provided by the act for raising revenue and other moneys, for State and county purposes and expenses." The following language of the court shows clearly the grounds upon which it held that the plaintiff could recover, in a suit against the collector, the property levied upon by him to satisfy the taxes so extended by the clerk: "Where, in these sections, or elsewhere, the county clerk derived his authority to extend the special tax in question on Mt. Pleasant township tax books, we have not been able to discover.   *   *   He had no authority to do so, and this is not the case of an irregularity in the levy of a legal tax, but a levy made by one who has not the semblance of authority to do so, and such a levy, so made, affords no defense to a collector for a seizure of property under it."

In *Ranney v. Bader*, 67 Mo. 476, the doctrine announced in *Ruby v. Shane* was explicitly recognized in the following language: "In the case of *Ruby v. Shane*, which we think decisive of the second point we are considering, it was held that when the property was liable to taxation, and the assessor's book, superintended and sanctioned by the county court, ordered the collection of the tax, the collector would be exonerated from liability, and that when the assessment is illegal, or based on the illegal act of the county court, the remedy of the tax-payer must be by a proceeding to arrest the execution of the illegal assessment and collection of the tax." There is great force in the following observations of Judge Napton, in the opinion delivered by him in *Ruby v. Shane:* "To hold a subordinate ministerial officer responsible for the erroneous opinions and judgments of the judicial tribunal under whose mandate he acts, is not consistent with our views of justice, public policy or expediency. Preventive remedies should be favored, but punitive judgments against innocent parties should not be encouraged.   *   *   It is true that no redress has been indicated where the illegal tax has been paid, but would it not be

more in accordance with justice and the principles of law, that several hundred or several thousand people, not one of whom ventured to ask the interposition of a court before the collector came around, should suffer the loss of an inconsiderable sum, than that the officer to whom is entrusted the collection of the revenue should be compelled to refund to the hundreds or thousands from whom he has collected a tax, the aggregate sum collected on an illegal assessment?" The remedy of the tax-payer against illegal assessments and levies, is clearly indicated in *Rubey v. Shane* and *Ranney v. Bader*, and he has no occasion to wait "until the tax-collector comes around," but may institute his proceeding to enjoin the collection of the tax, even before the tax-books are delivered into the hands of the collector.

The judgment of the circuit court is affirmed. All concur, except SHERWOOD, J.