STATE OF MISSOURI *ex rel.* HAZARD *v.* SPIVA *et al.*

HAZARD *v.* SPIVA.

(*Circuit Court, E. D. Missouri, E. D.*)

1. TAXATION—COLLECTION—DEMAND.
   Under Rev. St. Mo. 1889, § 7608, which provides that no seizure of personal property for taxes on real estate "shall be made until the collector has made demand for the payment of the tax, either in person or by deputy, to the party liable to pay the same, or by leaving a written or printed notice at his place of abode * * * with some member of the family," a demand upon an agent in charge of the taxed property is insufficient to justify a seizure, though the owner is a non-resident, and it is impossible to make demand on him in either of the statutory modes.

2. REPLEVIN—PROCESS—TAXATION.
   A tax-book authenticated by the seal of the court, under which a tax collector is authorized by statute to seize and sell property to enforce the collection of taxes, is process, within the meaning of Rev. St. Mo. 1889, § 7479, which limits the right to bring an action of replevin to cases where the property "has not been seized under any process, execution, or attachment against the property of the plaintiff."

3. SAME.
   Where property is held by the collector under the authority of such book, the fact that he seized such property without first making proper demand for the taxes does not authorize the owner against whom the tax was levied to maintain replevin therefor.

At Law. On demurrer to plea.

The first of these suits was an action on the official bond of H. S. Spiva, as collector of the revenue for Madison county, Mo., to recover damages for an unlawful levy made September 15, 1889, on certain personal property of Hazard's, to enforce payment of certain taxes assessed against Hazard on real estate for the year 1888. The laws of Missouri provide, in substance, that no levy shall be made under a tax-bill until a demand for the payment of the same shall have been made by the collector or his deputy, of the party liable therefor, or by leaving a written or printed demand at his place of abode with some member of the family over 15 years of age. Rev. St. Mo. 1889, § 7608. The complaint is that the levy was made without such demand, and was

[1] This section provides the fees which shall be taxable as costs.

therefore unlawful. The defendants interposed a special plea to the effect that Hazard was a non-resident of the state, owning extensive lead mines, smelting furnaces, machinery, stores, etc., in Madison county, and that such property is, and for years has been, in actual charge and control of an agent of Hazard's, and that a demand for the payment of the tax-bill, such as the statute requires, was made of such agent, it being impossible to make a demand on Hazard himself in either of the ways pointed out by the statute. To such plea there was a demurrer. The second suit (No. 3,104) was an ordinary action of replevin brought by Hazard to recover possession of 2,000 pigs of lead, which were levied upon by the collector on January 20, 1890, for taxes of 1889 assessed against Hazard. It is claimed that such levy was unlawful for want of a proper statutory demand, and there was a plea as in the first suit that a sufficient demand was made on Hazard's agent. To this plea there was a demurrer.

*Lee & Ellis* and *George R. Lockwood,* for plaintiff.

The substantial questions in this case are: (1) Can a collector of taxes in this state, under section 6754, Amended Acts 1883, p. 143, seize and sell personal property to satisfy a tax-bill against the owner, without in person or by deputy having made a demand of the owner for the payment of the tax, or leaving a written or printed notice for that purpose, at the place of abode of the owner, with some member of his family over the age of 15 years? (2) If a seizure of property, under said section, is made, will replevin lie therefore; that is, is it seized under any process, execution, or attachment against the property of such owner, plaintiff in replevin?

1. The answer to the first question must depend chiefly upon the language of the statute, as the exact point raised has never been decided, so far as we know, by the courts of this state. Turning to the statute, (formerly § 6754, Rev. St. 1879,) we find that the conditions precedent to a seizure of property by the collector are a demand of the person liable to pay the tax, or by leaving notice thereof at his place of abode with some member of his family over 15 years of age. It is apparent from the answer demurred to that the tax was not personally demanded of Mr. Hazard by the collector or his deputy, nor was notice to pay the same left at his place of abode with a member of the family over the age of 15 years. To which of these demands is that set up in the answer equivalent; and, if equivalent to either, why that, rather than the alternative? And where is the authority for saying that there can be any demand equivalent to those prescribed by the statute? If the demand set up is said to be equivalent to a personal demand, we say that the statute prescribes a method of demanding the tax when a personal demand cannot be made, and the demand alleged is not that prescribed in such case. On the other hand, if the demand set up is said to be equivalent to notice left with a member of the family, we say that the statute does not provide for any equivalent to such notice, except personal demand. If a personal demand for taxes is not made, then notice may be served as a summons may be, and, if the demand set up would not be a good return of service of a summons, it is not good as a demand, under section 6754; and who would think of pretending that the facts set up in the defense demurred to would be a good return by a sheriff of service of a summons. The seizure and sale of a person's property, without a trial or judicial determination of the liability of the owner for the debt for which his property is taken, is certainly a high governmental power, and therefore there must be a distinct authority of law for the seizure; and every condition precedent thereto, though apparently trivial, must be complied with.

*Railway Co.* v. *Apperson*, 97 Mo. 300, 10 S. W. Rep. 478, recognizes and strictly enforces this doctrine, citing as authority therefor: Blackw. Tax-Titles, (2d Ed.) 255; Dill. Mun. Corp. (2d Ed.) 610; Cooley, Tax'n, (2d Ed.) 324, 348, and many Missouri decisions. In *Town of Warrensburg* v. *Miller*, 77 Mo. 56, the doctrine now under consideration is rigidly applied, and the court says, (page 60,) citing Cooley: "Whatever the statute provides for in this regard the collector must have, and he is a trespasser if he proceeds to compulsory action without it." Sec, also, *Howard* v. *Heck*, 88 Mo. 456. But this question is almost put beyond argument by the decision of the St. Louis court of appeals in *State* v. *Sargent*, 12 Mo. App. 237, where the court, in speaking of section 6754, says: "Nor does the law allow the collector to seize personalty for taxes without notice to the party liable, given in person, or by leaving a copy with his family at his residence, which in case of non-residents seems impossible." This declaration by the court of appeals, the language of the statute, and the principles of law governing the exercise of the authority asserted by defendant, as established by the leading text-writers and the decisions of the supreme court of Missouri, make it clear, we think, that defendant was a trespasser when he seized the property involved in this suit.

2. The next question to be considered is whether this property was seized under any process, execution, or attachment against the property of the plaintiff; or, in other words, is the tax-book a process against the property of those whose property is listed? The constitution of Missouri, in section 38 of article 6, entitled "Judicial Department," provides that all writs and process shall run in the name of the state of Missouri; and the statutes (section 4037, Rev. St. 1879) say that all writs and process issued out of any court of record shall run in the name of the state of Missouri, and shall be tested by the clerk, and sealed with the seal of such court; and section 4038 provides that all writs and process issued by any judge or justice of the peace, or other officer authorized to issue the same, shall run in the name of the state of Missouri, and be subscribed by the officer issuing the same. Bouvier speaks of "process" as "the method taken by law to compel a compliance with the original writ or commands of court." Wharton's Law Lexicon, tit. "Process," says: "It is largely taken for all the proceedings in any action or prosecution, real or personal, civil or criminal, from the beginning to the end." Abbott's Law Dictionary says of "process" that it is "strictly the mandate of the court to the officer, commanding him to do certain things or perform certain services within his official cognizance." Tomlin's Law Dictionary says of "process"—"*First*. It is largely taken for all the proceedings in any action or prosecution, real or personal, civil or criminal, from the beginning to the end. *Secondly*. That is termed the process by which a man is called into any temporal court, because it is the beginning or principal part thereof, by which the rest is directed; or, taken strictly, it is the proceeding after the original, before the judgment." Anderson's Dictionary of the Law says of "process:" "Something issuing out of a court or from a judge; a writ of any nature." "At common law, the means of compelling the defendant to appear in court." By Code Iowa, 1851, (or section 4455, Rev. St. 1888,) the petition in replevin must state that the property replevied was not taken on the order or judgment of a court, nor on execution or attachment; but in *Morford* v. *Unger*, (1859,) 8 Iowa, 82, replevin was maintained for property taken "by virtue of a precept or warrant" affixed to a tax-list. In *Gilmer* v. *Bird*, 15 Fla. 410, it was decided that a notice given, under the Code, by an attorney, of the institution of a suit, in the form of a summons, but not issuing out of a court, was not process, within the meaning of that provision of the constitution of Florida which provided that the style of all process shall be "The State of Florida," citing Baron COMYN, who says: "'Process,' in a large acceptance, comprehends the whole proceeding after the original, and before the

judgment; but generally it imports the writs which issue out of any court to bring the party to answer or for doing execution, and all process out of the king's courts ought to be in the name of the king." In this case it was also decided that the term "process," in the provision of the constitution just referred to, and in that one which said that no person should be deprived of life, liberty, or property without due process of law, did not mean the same thing, and that, therefore, notice by the attorney, as given, was "due process of law," though the notice was not "process." In *Curry* v. *Hinman*, 11 Ill. 420, it was held that "the copy of the judgment certified to a collector, on which lands are authorized to be sold for taxes, is not 'process,' within the meaning of the seventh section of the fourth article of the constitution, and need not run in the name of 'The People.'" On page 425, the court says: "Whether the court or the legislature, either of which may make a copy of the order indispensable to a valid sale, chooses to designate it by the name of 'process,' it is not thereby made 'process,' within the meaning of the constitution. Either might, with the same propriety, have called them by any other name, but still they would be but copies of the order, decree, or judgment. The meaning of this constitution does not change with a name." Speaking of the order issued in this case, the court, on page 426, further says: "The truth is that it has not one single attribute of an execution at law, or of any other proceeding or process which used to run in the name of the king, and it would never have occurred to any lawyer that it could be process, if the legislature had not so called it. But for this legislative christening, he would almost as soon have thought of calling it an indictment. * * * With equal, if not more, propriety, might it be contended that the assessment list with which the collector is furnished under the thirty-first section is process, and should have this constitutional head to make it valid; for under it he is not only required to sell property, but he must levy upon and seize it." From the language of our constitution, the place where it is found, and the interpretations given such language by the courts, from the statutes, and from the definitions of the word "process," we see that that word, as used in the constitution and statutes, means a judicial writ, containing a command in the name of the sovereign power. How the tax-book, given to the collector, can be tortured into a writ of this kind, it is impossible to conceive, as it has not a single feature resembling those of process, if the common-law or constitutional meaning is given to that term. Therefore, though property seized under section 6754 is taken by "due process of law," it is not seized under process, execution, or attachment; and in this case it is clear that the defendant was guilty of a trespass in seizing plaintiff's property, and the demurrer to his answer should be sustained.

*George D. Reynolds* and *R. A. Anthony*, for defendant.

THAYER, J., (*after stating the facts.*) It will be observed that the question whether the demand made on Hazard's agent was sufficient to authorize a levy is common to both cases, and will be first noticed. That a demand is necessary prior to a levy, and that a levy made without a precedent demand is a wrongful act, under the language of the statute, admits of little doubt. The provisions of the statute, (section 7608,) that "no seizure * * * for taxes shall be made until after the first day of October of each year," and that "no such seizure * * * shall be made until the collector has made demand for the payment of the tax, either in person or by deputy, to the party liable to pay the same, or by leaving a written or printed notice at his place of abode for that

purpose, with some member of the family over 15 years of age," are each mandatory provisions, and are not merely directory.

If a collector neglects to perform a duty which the law expressly devolves on him as a condition precedent to making a levy, I can conceive of no good reason why he should not be held liable for whatever damage is occasioned by his neglect of official duty. The legislature has also prescribed the precise form of demand. It must be a demand made in person, by the collector or his deputy, on the person liable for the tax, or by notice left at his place of abode with some member of his family over 15 years of age; and I know of no rule of law that would authorize the court to say that some other form of demand, such as a demand on the plaintiff's general agent or business manager, will suffice. This provision also seems to be mandatory. If the statute merely required a demand to be made, without prescribing the form of demand, or the person upon whom it was to be made, the demand alleged in the plea might be adjudged sufficient. *King* v. *Whitcomb*, 1 Metc. 328. The general rule is that all provisions of law regulating the assessment of taxes, and proceedings for the seizure and distraint of property for the payment of taxes, should be strictly pursued, and the rule has been frequently approved in this state. *Town of Warrensburg* v. *Miller*, 77 Mo. 59; *Railroad Co.* v. *Apperson*, 97 Mo. 306, 10 S. W. Rep. 478, —and cases cited. The act of April 28, 1877, (Laws 1877, p. 381,) appears to have been the first act adopted in this state permitting personal property to be seized for a tax-bill against realty, and was in that respect a radical change in the law regulating the collection of taxes. It may be that the legislature failed, through oversight, to provide a feasible method of making a demand for the payment of taxes, of non-resident tax-payers. On the other hand, it might with as much reason be said that the legislature intended to leave taxes assessed against non-residents, to be collected by suit brought in the ordinary form, when a personal demand was not practicable, inasmuch as taxes assessed against non-residents are usually upon real estate, and are well secured by a lien upon the realty. Speculations of this sort, however, do not aid materially in reaching a decision, as courts are now authorized to make laws, or to remedy defects in legislative enactments, when such defects exist. The statute does not, in terms or by necessary intendment, authorize a levy, unless there has been a personal demand on the tax-payer, or a notice left at his place of abode with a member of his family. I conclude, therefore, that a demand made in any other form will not suffice. *Vide State* v. *Sargent*, 12 Mo. App. 237.

2. In view of the fact that in this state a plaintiff in replevin, in order to obtain the writ, must make oath that the property sought to be recovered "has not been seized under any process, execution, or attachment against the property of the plaintiff," (Rev. St. Mo. 1889, § 7479,) a question arises whether replevin is, under any circumstances, a proper remedy for a tax-payer whose property, as it is claimed, has been wrongfully seized under a tax-bill issued against him? This is a question of local law, and, if the supreme court of the state had heretofore

considered the question, its decision would be binding on this court. I do not find, however, that the question last mentioned has ever been considered and determined by the state courts. It was not considered in *Mowrer* v. *Helferstine*, 80 Mo. 23, or in *Henry* v. *Bell*, 75 Mo. 195, or in *Rubey* v. *Shain*, 54 Mo. 207, to which my attention was particularly directed on the hearing of the demurrers. The point discussed and determined in those cases, was whether the assessments involved were so far regular as to protect the collector from all liability for seizures made thereunder. Whether replevin is a proper remedy to test the validity of an assessment, or the validity of a seizure made under a tax-bill, is a question not authoritatively determined by either of those cases, or by any of the cases cited by counsel. Regarding the question as open for consideration, I have reached the conclusion that in this state replevin is not a proper remedy, when the person invoking such remedy is himself the person against whom the tax-bill issued under which the seizure complained of was made. The tax-book under which collectors are authorized to act is required to be authenticated by the seal of the county court and the signature of its clerk before it is delivered to the collector. The revenue law gives to the book so authenticated the force and effect of an execution, by providing in substance, that after the collector receives it and has made demand, he may thereunder distrain and sell property in like manner and with like effect as under a writ of execution. In my judgment, a book of that description, authenticated by the seal of a court, and under which a public officer is authorized by statute to seize and sell property, may be aptly termed "process," within the meaning of the replevin act, whether regard be had to the technical meaning of the word or its ordinary use. I know of no reason why a strict construction should be placed on the word "process," as used in the replevin act, so that it will only comprehend writs issued by courts of law or equity, in the exercise of their ordinary jurisdiction.

Looking at the question from the stand-point of public policy, it appears to be quite as important that a tax-payer should not be allowed to replevy property seized for taxes, as that a defendant in an execution or attachment should be denied that remedy. If tax-payers were allowed to replevy property distrained for taxes, it is obvious that the collection of the public revenues might at any time and under numerous pretenses, be seriously impeded. Nor is it necessary for the protection of the tax-payer that a remedy by writ of replevin should be accorded to him. The law is well settled in this state that a tax-payer may enjoin the collection of an illegal tax. *Rubey* v. *Shain*, *supra; State* v. *Saline Co.*, 51 Mo. 352; *Ranney* v. *Bader*, 67 Mo. 479; *Mowrer* v. *Helferstine*, 80 Mo. 27. And if as, in the case at bar, the seizure is claimed to be unlawful, not by reason of any defect in the assessment, but because of some neglect of duty on the part of the collector, it seems clear that the tax-payer might obtain adequate relief for such wrong, by a suit against the collector for damages, if the neglect of duty would, under ordinary circumstances and but for the replevin act, enable the tax-payer to maintain replevin.

It was urged by plaintiff's counsel that the failure of the collector to make a proper demand prior to the levy, entitles the plaintiff to maintain replevin, although it be conceded that a tax-book, duly authenticated as provided by law, is legal process. The court, however, is not able to concur in that view. The test of plaintiff's right to maintain replevin is whether the property in controversy was actually held by the defendant at the time suit was brought under process issued against the plaintiff. If it was, and the plea in this case so avers, he cannot maintain replevin, but must resort to some other remedy for the injury sustained. The statute, in general terms, denies the right to replevin property that has been seized, and is held by an officer, under any process, execution, or attachment against the plaintiff. There are no exceptions to the rule mentioned, and no provisions of the statute appear to warrant the inference that replevin may be resorted to, if the mode of serving the process pursued by the officer was faulty or irregular. The construction contended for would practically create an important exception to the rule, not found in the statute, and one that would impair its efficacy. It would, in its practical operation, enable a litigant, against whom process for the collection of a debt has been issued, to test, by means of a replevin suit, the regularity of every act done by a ministerial officer in the execution of such process. This, in my judgment, was a result not contemplated by the legislature. On the contrary, its purpose seems to have been to withhold from a person whose property has been seized under process for the collection of a debt, the power to interfere with the execution of such process by a writ of replevin. My conclusion is that the demurrer to the plea in the suit for damages should be sustained, but that the plea in the replevin suit states a good defense, and that the demurrer should be overruled, for the reason that it shows that the property, when the writ of replevin was sued out, was held under legal process issued against the plaintiff.