THE TOWN OF WARRENSBURG *ex rel.* COLBERN, *Appellant*, v. MILLER.

1. **Officer**: TRESPASS: LEGAL PROCESS. In order that an officer may justify under process, it is essential that jurisdiction be possessed by the court or tribunal from which the process emanates, and that it be fair on its face.

2. **Case Adjudged**: ILLEGAL ASSESSMENT AND LEVY OF TAXES: LIABILITY OF COLLECTOR. The charter of a town provided for the levying of taxes by ordinance of the council, the rate not to exceed one-half of one per cent. An ordinance made it the duty of the assessor to make the assessment after the 1st day of May in each year, and provided that his valuation could be corrected by the council on the appeal of a tax-payer, and further, that the tax-book should be returned to the council, to remain for the inspection of all persons interested; that thereafter the clerk should transfer to a "delinquent tax-book" the lots on which taxes were unpaid, and that by the delinquent tax-book the collector should be authorized to seize and sell property. In the present case the assessment was made in April; at a meeting of the council the valuation of the property of a tax-payer, who did not appeal, was increased, and by this increase his tax was made to exceed the legal rate on the assessor's valuation; the tax was then levied by a resolution of the council; the original tax-book was not returned to the council, nor a delinquent book prepared, but by resolution the council ordered that the original tax-book be turned over to the collector as the delinquent tax-book, and this was done. The collector having seized and sold the property of the above mentioned tax-payer to satisfy the tax so levied, he brought this action on the collector's bond. `Held, that the council had no jurisdiction to make the levy by resolution; that the substitution of the original for the delinquent tax-book was illegal; that as process it was void, and that the collector was bound to take notice of the defects, and was liable as a trespasser for his proceedings under it.

3. **Action at Law**: JURISDICTION: EQUITY. A court of equity will prevent a threatened injury where the remedy at law is inadequate.

But failure to invoke this remedy is no bar to an action at law for the injury actually done. Per SHERWOOD, J.

4. **The cases of** *Rubey v. Shain*, 54 Mo. 207, and *Ranney v. Bader*, 67 Mo. 476, criticised by SHERWOOD, J.

*Appeal from Johnson Circuit Court.*—HON. W. S. SHIRK, Judge.

REVERSED.

*Philips & Jackson* for appellant.

*J. J. Cockrell* for respondents.

SHERWOOD, J.—Action on the bond of defendant, who was town marshal and *ex-officio* collector of the town of Warrensburg. The breach assigned is the wrongful seizure and sale by the defendant under color of his office of the personal property of the relator. The sale of the property being admitted, the controlling question in the case is whether by reason of the circumstances detailed in evidence, any liability on the part of the defendant has been incurred.

In order that an officer may justify under process it is essential that jurisdiction be possessed by the court or tribunal from which that process emanates, and that such process be fair on its face. In the case at bar was the process fair on its face, and did the council have jurisdiction? If these questions be answered in the negative the liability of the officer must be deemed established. To determine how these questions should be answered we will examine the facts in the case and the charter and ordinance of the town of Warrensburg.

The town clerk and *ex-officio* town assessor had assessed the property of the town and returned the assessment and list to the mayor on the 1st day of May, 1874. This assessment was made in April, 1874; when by the terms of the ordinance the town clerk was not to make the assessment

until "after the 1st day of May in each and every year;" so that the initial step in the premises was contrary to law. There were some few appeals taken from this assessment, but relator did not appeal. The council gave notice to the inhabitants of the return of the lists and held a meeting to hear and decide "all appeals of those aggrieved." Notwithstanding the relator did not appeal the council at such meeting not only increased the total valuation of the town property to some extent, but increased the valuation of relator's property more than two fold. This was clearly beyond the power of the council. They only possess the power of correcting the assessor's list when an appeal is taken and not otherwise. Nor did they obey the organic law of their municipality, to-wit: their charter, when they by resolution extended the taxes on the list thus corrected by them and ordered such taxes to be levied, etc., because that charter only conferred power on them to levy and collect taxes by ordinance. The resolution was, therefore, a nullity.

But these proceedings of the council in contrariety of charter and ordinances did not stop with this unauthorized resolution. On the first day in October in each year, section 13, ch. 3, art. 2 of the ordinances requires that the tax-book be returned to the city council and that "such tax-book shall thereafter remain on file in the office of the clerk of the town for the inspection of all persons interested." Within twenty days after the return of the original tax-book it is made the duty of the clerk to transfer to a book to be known as the "delinquent tax-book," the lands and lots upon which the taxes remain unpaid. "The collector, by virtue of such delinquent tax-book," was authorized to seize and sell personal property. The original tax-book, however, was never returned and delivered to the town clerk as required by law. But on the 4th day of November, 1874, the council, by another resolution, ordered that the original tax-book "be turned over as the delinquent book for 1874, to J. K. Miller, marshal and *ex-officio* col-

lector, and that he receipt for the same," and it was by virtue of this, the original tax-book, that the seizure and sale were made.

It is quite plain from the foregoing brief recital of facts and reference to the charter and ordinances of the town of Warrensburg, that the seizure and sale of relator's property were altogether unwarranted by law. If the town clerk can anticipate by one month the day of assessment pointed out in the ordinance then might he do so for a much longer period. As the assessment is the only valid foundation for all the proceedings which follow it, " it is, therefore, not only indispensable, but in making it, the provisions of the statute, under which it is to be made, must be observed with particularity." Cooley Tax., 260. If the town council can, in direct violation of their charter, levy taxes in any other method than that provided, by ordinance, then the charter possesses no binding or obligatory force. If the town council can, in contravention of its own ordinance, correct the assessment list prepared by the town assessor and increase the valuation of the property when no appeal is taken from such assessment, then the ordinance is of no avail as a rule of municipal action. Similar observations are equally pertinent as to the resolution commanding that the original tax-book be turned over to the marshal as the " delinquent tax-book." In no circumstances does the ordinance allow the original tax-book to be used as the execution process. The ordinance having provided that the " delinquent tax-book " should authorize the collector to seize and sell personal property, every other method of proceeding was obviously excluded. *Alexander v. Helber*, 35 Mo. 334. And the defect was apparent on the face of the original tax-book, and the collector to whom it was delivered was bound to know the law, and that he was acting under void process and at his peril. *State v. Shacklett*, 37 Mo. 280. And the resolution of the council ordering that the collector use the original tax-book as the " delinquent tax-book," does not help the

matter nor better the collector's plight. The council could not by a resolution violate their own municipal law. No more could they authorize any one else to do so.

The principle announced in cases of this sort is, that " whatever the statute provides for in this regard the collector must have; and he is a trespasser, if he proceeds to compulsory action without it." Cooley on Tax., 292, and cases cited. Under the ordinance the " delinquent taxbook" is but another name for a warrant, such as is usually employed in tax collections and sales, and is, therefore, to be governed by similar rules. Where a warrant issues " it must conform to the law authorizing it and be issued by the proper person designated by law, or it is no protection to a collector." Ib. In the present instance, not only was there an entire lack of legal process, but even that which was unwarrantably substituted therefor was not issued by that officer who alone possessed authority to issue legitimate process.

If a circuit court, being possessed of jurisdiction over person and subject matter, should order that the amount recovered by its judgment be indorsed on the writ of summons, and that this writ be used by the sheriff as a *fieri facias*, no one would contend that such order and such summons would be any protection to the officer; and yet the circuit court in the hypothetical case would have had jurisdiction down to the time of the recovery of judgment, but none whatever to authorize the issuance of the anomalous writ. If the order of the circuit court in the case instanced, would afford no protection to the officer, surely none was afforded in the case under discussion. So that, though it be conceded that jurisdiction over the subject matter existed in the council, this concession, under the principles stated and the authorities cited, would not save the collector from occupying the predicament of a trespasser. But the council, as already stated, had no authority to levy a tax by resolution, or to correct the assessment made by the town assessor, except when an appeal was

taken from such assessment, and no authority to levy, even by ordinance, a tax exceeding one-half of one per cent for town purposes. The effect, therefore, of the unwarranted increase in the valuation of relator's property, was to increase his taxes to three per cent. These being the facts in this case, it cannot be affirmed that jurisdiction of the subject matter existed, or even if it did, that it would justify the excessive taxation. And it was for the purpose of collecting this excessive tax, which caused the wrongful act which forms the basis of this suit.

For the foregoing reasons both of the questions propounded at the outset, must meet with negative replies, and of consequence the collector be held liable. Therefore judgment reversed and cause remanded.

My associates concur in reversing the judgment, on the ground that the execution process not being in compliance with the charter and ordinances, was no protection to the officer. I have some additional views which I will present in a separate opinion.

### Separate Opinion.

SHERWOOD, J.—Of the liability of the collector on any of the grounds stated in the foregoing opinion, I entertain no manner of doubt. This was the doctrine constantly asserted by this court until a comparatively recent period. The principle enunciated being briefly this: That void things are no things; that a void authority is the same as none at all. *State v. Shacklett, supra.* In the early case of *Deane v. Todd,* 22 Mo. 90, Judge Leonard, speaking for the court, said: "If the assessment against the plaintiff could be considered a nullity, conferring no authority on the assessor to sell the personal property of the plaintiff, the remedy of the party would be to sue the officer for the trespass and disregard the pretended title of the purchaser." In *Sayre .v. Tompkins,* 23 Mo. 443, the same learned judge, who was well grounded in the fundament-

als, as well as the higher branches of the law, said: "The relief here sought is to restrain the defendant from selling the plaintiff's personal property under an assessment of school taxes, made by the proper school district authorities. This is not a proper case for equitable relief. If the assessment be void, as alleged, it will not protect the officer, nor will a sale divest the plaintiff of his property. The wrong can be fully compensated for at law. It is not in any sense an irreparable injury, and no reason exists for transferring the jurisdiction in such cases from law to equity. There is as yet no authority of this court, that we are aware of, to warrant this relief, and we are not disposed to make one by sanctioning the present proceeding." In *Bank v. Meredith*, 44 Mo. 500, Judge Bliss, speaking for this court, said: "There is no equity in this petition for two reasons: first, it is well settled that an injunction to restrain the collection of taxes is not the proper remedy for an illegal or irregular tax, unless the sale of the property is accompanied by such circumstances that it will work irreparable mischief, or, in the language of the statute, when an adequate remedy cannot be afforded by an action for damages. It is unnecessary to cite the numerous authorities in England and in other states, and I will only refer to the following from our own reports," etc., etc. This doctrine was reiterated again and again by this court, and was never doubted or denied either in this court or elsewhere, until the case of *Rubey v. Shain*, 54 Mo. 207, arose. When that case first came here, 51 Mo. 116, the appeal was dismissed because no final judgment was entered. But it was held that the petition stated a cause of action and that the "defendants should have answered to the merits instead of demurring." On the return of that cause, however, a different view was taken of the law and the petition held to state no cause of action. That case is on all-fours with this one, with the single exception that there no sale of the personal property levied on actually occurred. This court held that the tax was illegal and

void, but that no recovery could be had against the officer; that plaintiff's only measure of relief was to obtain an in-junction to arrest the execution of the illegal subscription or other order of the county court upon which the void tax complained of was based, and that if the tax-payer failed thus to employ preventive measures he was thence-forth remediless.

The doctrine is a familiar one that a court of equity will interpose to prevent a threatened injury where the remedy by law is inadequate. But the doctrine is by no means familiar that if you fail to invoke equitable relief to thwart threatened danger that such failure on your part ousts the jurisdiction of a court of law, to give redress for the injury when actually done. It would seem at first blush that if the impending injury were sufficiently great to authorize equity in the first instance to prevent it, that *a fortiori*, a court of law should grant redress for such in-jury when fully consummated. This court has held that if a party, by "moral duress," by illegal exaction, by a threat to sell personal property, be compelled to pay a sum of money to a collector, that such sum could be recovered in an action for money had and received. *Maguire v. State Savings Asso'n*, 62 Mo. 344. That case was unanimously approved by this court in the case of *Westlake v. St. Louis, ante*, p. 47.

If an action at law of the description just mentioned can be maintained where the trespass, the illegal act, is merely threatened, assuredly an action ought to lie when that threat finds actual consummation. Speaking for my-self, therefore, I perceive no sound reason why the doctrine of *Rubey's case* should be any longer followed.

The case of *Ranney v. Bader* is relied on as supporting the judgment rendered by the lower court. The action in that case was for the recovery of money collected by means of an illegal, unconstitutional and void tax on the real estate of the plaintiff, whereby he was coerced to pay the sum thus illegally levied. The tax was adjudged by this

court to be as plaintiff claimed, but on the authority of *Rubey v. Shain, supra,* it was held that no action would lie for the recovery of the sum thus illegally exacted. A case whereby money is extorsively obtained by the levy or threat to levy on personal property for the purpose of collecting an illegal and void tax, is not, as I conceive, distinguishable in principle from one where a precisely similar illegal exaction takes place by the levy of the same tax on real property. It is true that in the latter case equity will sometimes interfere by injunction, and never in the former save in exceptional instances. But the fact that equity interferes to prevent injury being done, does not oust the jurisdiction of a court of law to give damages for the injuries when done. Speaking for myself then, I am of the opinion that the money extorsively obtained in *Ranney v. Bader* should have been recovered as well in that as in *Maguire's case, supra,* since it can scarcely be held to be in consonance with either reason or justice that the protection of the officers should proceed not from the nature of the process he holds, but from the nature of the property whereon he levies.