HOWARD v. HECK *et al.*, *Appellants*.

1. **Revenue :** ASSESSOR'S BOOK, VERIFICATION OF : JURISDICTION : TAX SALE. The failure of the county clerk to sign and seal the assessor's book, as required by section 65, page 1171, 2 Wagner's Statutes, renders it of no official validity, and makes the collector's report of the delinquent list to the county court, as provided by section 190, page 1198, 2 Wagner's Statutes, unauthorized and invalid; and the county court, in such case, is without jurisdiction and powerless to act.

2. **Tax Sale, Impeachment of Validity of :** EVIDENCE, The validity of a sale of land for taxes may be contradicted by showing any substantial non-compliance with the revenue act, and all books, papers and records in the county clerk's office, pertaining to the subject of taxation, may be introduced in evidence for that purpose. Wag. Stat., sec. 211, p. 1204; *Ewart v. Davis*, 76 Mo. 129.

*Appeal from Moniteau Circuit Court.*—HON. E. L. EDWARDS, Judge.

REVERSED.

*Draffen & Williams* for appellants.

*Edmund Burke* for respondent.

(1) Failure to return the delinquent tax list shall in no way affect the validity of the assessment, judgment, sale or lien of the state. W. S., 1872, sec. 172, p. .1194. (2) The notice of sale was sufficient. W. S., 1872, sec. 184, p. 1197. (3) Plaintiff's deed was in the exact words of the statute and contained all that was essential. *Wilhite v. Wilhite*, 53 Mo. 74 ; *Stewart v. Severance*, 43 Mo. 322 ; *Williams v. McLanahan*, 67 Mo. 499. (4) The blending of the taxes of 1873 and 1875 in the deed was immaterial. *Wilhite v. Wilhite*, 53 Mo. 74 ; *Stewart v. Severance*, 43 Mo. 322. (5) The assessment and tax sale were made while the law of 1872 was in full force and by it plaintiff's rights should be determined. *State ex rel. v. Mantz*, 62 Mo. 260. (6) No assessment of property or charges for taxes therein shall be considered illegal on account of any informality in making the assessment, or in the tax list, or on account of the assessments not being made or completed within the time required by law. W. S., 1872, p. 1168, sec. 53 ; *State ex rel. Halpin v. Powers*, 68 Mo. 327. (7) . Even though some informality or irregularity may have occurred in the proceedings of the county court in subjecting the lands in suit to sale, the same was cured by section 19, page 1036, Wagner's Statutes. The tax deed was properly made by the collector in office at the time of its execution. W. S., 1872, p. 1205, sec. 216 ; W. S., 1872, p. 1205, sec. 216.

SHERWOOD, J.—Plaintiff brought suit in ejectment for three hundred and seventy acres of land sold for the sum of $101.83 for taxes, assessed for the years 1873 and

1875.   Each tract of the land was knocked off to him for the precise amount of the tax assessed thereon and no more.

Section 65 of the revenue act then in force (2 W. S., p. 1171) required that the county clerk, within ninety days after the assessor's book is corrected and adjusted, make a fair copy thereof, with the taxes extended therein, authenticated by the seal of the court, for the use of the collector.   The copy of the assessor's book for the year 1873 was not signed, sealed, nor in any manner authenticated by the county clerk, as required by the section already mentioned.   The same lack of a certificate is shown by the tax book for 1875.   It follows from these premises that the so-called tax books, not being authenticated in any manner whatever, cannot be regarded in any other light than mere unofficial lists bearing on their face none of the insignia of authority. Treating of this subject an author says :   "The tax list is the warrant of the sheriff to collect the taxes, and it should be authenticated by the official certificate of the clerk as a true copy of the original list filed and recorded in his office.   The list ought to be so authenticated as not only to satisfy the sheriff that it is a copy of the original, but also to appear upon inspection to the citizens to be official evidence of their liability.   It would seem of necessity that a mere copy of the list, not purporting to state what it is, nor whence it comes, nor by whom made, would not answer the purposes intended by the legislature."   Blackwell on Tax Titles [4 Ed.] 193. Another author, discussing the same matter, observes : "Before a collector is authorized to proceed in the collection of the taxes, he must have his warrant for the purpose, in due form of law.   *   *   *   No question is made any where of the correctness of this doctrine.   Whatever may be the requisites of the warrant under the statute, care must be taken that they be observed."   Cooley on Taxation [1 Ed.] 292.

Blackwell elsewhere remarks: "The rule is well settled that every public document; which is required by law to be executed by a public officer, and preserved as a memorial of the facts recited in it, must be verified by the official signature of the person who made it. The object of the rule is the identification of the document as an official act executed by authority of law; and its spirit is answered only when the official character of the person making it is established, and the document appears upon its face to be an official act attested by the signature of the officer. The reason of the rule is obvious." p. 379.    *    *    *    "The principle is uniformly conformed to by all the great departments of government. The proclamations of the King bear upon their face the official character of the act. The process of the courts runs in his official name, are attested by his chief judicial officer and authenticated with the seal of the court. The presiding officers of the two houses of parliament authenticate the passage of all bills, and the legality of warrants, by their official signatures. And in this country every officer, from the President down to an overseer of the poor, verifies in this manner his official acts. The rule extends to all official documents connected with the sales of land for the non-payment of taxes."

"The statute of Vermont required the collector to advertise the delinquent list before selling the lands of non-residents, to deposit with the town clerk the newspaper containing the advertisements, and the clerk was directed to record them at length in a book to be kept for that purpose. In *Spear v. Ditty*, 9 Vermont, 282, the defendant relied upon a tax title and offered in evidence the record of the town clerk, headed 'collector's advertisements.' The record showed that the advertisements were simply signed, 'E. Spaulding,' without the addition of the word, '*collector*.' In the form of the ad-

vertisement prescribed by law, the official title was added. The court held the sale void for the omission in the record of the town clerk. The court remarked : ' It is not true that every man is presumed to be clothed with and to be exercising an official capacity, because it seems to be needed for what he was attempting. Such a principle would sweep away all official signatures and designations. The statute form must be strictly followed. Even a known public officer must so sign every official document. It is difficult to see how any one can act officially on paper and not so state on the paper.' " Blackwell on Tax Titles [4 Ed.] 380, 381.

This court has enunciated similar views in *Town of Warrensburg v. Miller*, 77 Mo. 56 ; *Ewart v. Davis*, 76 Mo. 195, and *State ex rel. v. Cook*, 82 Mo. 185. If these views are to be taken as correct, then the collector, had he attempted to seize and sell the property under and by virtue of the unauthenticated tax list, would have been a mere trespasser, and this for the reason that in contemplation of law he had no warrant or authority for his acts. And no other conclusion can be drawn as to the invalidity of his act when he reported the delinquent list to the county court, under the provisions of section 190 of the revenue act. If he would have had no authority to act in the former case, then certainly none in the latter ; and, therefore, it must follow that his return of the delinquent list was as unauthorized and invalid as would have been a sale by the collector of personal property. Taking this as true, a necessary corollary therefrom is that the county court acquired no jurisdiction in the premises to render a judgment against, or to order a sale of, the land in question. When discussing the provisions of the revenue act, in *Lagroue v. Rains*, 48 Mo. 536, and of the degree of strictness in proceedings under its provisions, this court said: "Power is conferred upon the [county] court, to be exercised on certain de-

fined and limited contingencies; and these contingencies must have happened, and the conditions on which it can act must have been performed, before its act can be valid. Its authority does not attach until the law has been pursued and complied with."

The contingencies in this case on which depended the power of the county court to act, not having happened, by reason of the fact that the collector had not been provided with a "tax book" such as the law would recognize, the county court must be held without jurisdiction in the premises and powerless to act. And it has been ruled that the tax book delivered to the collector is an essential link in the chain of procedure which ends in a perfect tax title: is as much jurisdictional as is the assessment list. *McCready v. Sexton*, 29 Iowa, 356; and this latter, unless verified as required by law, was altogether invalid, and all subsequent proceedings based thereon equally worthless. *State ex rel. v. Cook, supra.*

As to the binding force and effect of the judgment of the county court, it is only necessary to refer to our discussion of that subject in *Ewart v. Davis, supra*, and of the provisions of section 211 of the revenue act, allowing in contradiction of the validity of the sale of land for taxes the introduction in evidence of all the books, papers, and records in the county clerk's office pertaining to the subject of taxation.

There are other errors assigned, but the one mentioned is regarded fatal to plaintiff's case, and, therefore, judgment reversed. All concur, except Henry, C. J., who dissents.