THE ST. LOUIS & SAN FRANCISCO RAILWAY COMPANY, *Appellant*, v. APPERSON.

1. **Revenue:** ASSESSOR'S BOOK: VERIFICATION: COLLECTOR. The failure of the county clerk to sign and seal the assessor's book, as required by Revised Statutes, section 6723, renders it of no official validity and affords the collector no authority or protection for his acts in enforcing the taxes contained therein. In such case he must be regarded as a trespasser *ab initio*.

2. **Taxation of Railroads:** STATUTE. In levying a tax on the property of a railroad company for the purpose of raising funds wherewith to build a courthouse, there must, under Revised Statutes, sections 6879 and 6881, be an order of the county court levying the tax before the county clerk can extend the same on the tax-books, and if the county clerk, of his own head, without such order of the county court, extend such taxes, the same are void.

3. **Taxation:** INCURRING OF INDEBTEDNESS : AMOUNT TO BE SPECIFIED. In order to obtain the necessary assent of the voters of a county to the incurring of an indebtedness, they must be informed of the amount of such indebtedness; and when neither in the order of the county court calling the election, the notice of the same, the ballots cast thereat, nor in the order of the county court made thereafter, such amount is specified, the taxes levied to pay such indebtedness are void.

4. **Attorney and Client:** ESTOPPEL. When an attorney is sent to pay the legal and valid taxes assessed against his client and offers to pay illegal taxes, the illegality of which he is unaware at the time, the client, after discovering such illegality, is not estopped from disputing such taxes.

5. **Injunction:** TAXES. Injunction is a proper remedy to prevent the enforcement of the collection of taxes levied without authority.

*Appeal from Laclede Circuit Court.*—HON. W. I. WALLACE, Judge.

REVERSED AND REMANDED.

*John O'Day* and *E. D. Kenna* for appellant.

(1) The tax was unconstitutional. No levy for county purposes in excess of fifty cents on the one hundred dollars valuation could have been made, unless there existed at the time a valid subsisting indebtedness. Under the undisputed evidence the tax was not levied under such a state of facts, and was therefore void. Const. of Mo. art. 10, secs. 11, 12. (2) This was a tax which could not have been levied until an application for, and order of, the circuit court authorizing the same had first been made and had. And it was admitted that no steps in that direction had ever been taken. R. S., secs. 6798, 6799, 6800; *State ex rel. v. Railroad,* 87 Mo. 238. (3) There was no valid election held authorizing the levy or the incurring of any indebtedness. Neither the order of the county court, the notice of election, nor the form of ballots used thereat, expressed the amount of indebtedness which it was proposed to incur. R. S., secs. 6808, 6809, and 6810, as amended by act of 1883 (Sess. Acts 1883, p. 147); *State ex rel. v. Saline Co.,* 45 Mo. 245; *State ex rel. v. Saline Co.,* 48 Mo. 390; *Railroad v. Wells,* 39 Ind. 539. (4) The tax was levied in the month of December, which was contrary to the mandatory provisions of law expressly providing for a different time. The county court had no power except that conferred by the legislative grant and which must be strictly construed. A certain time was fixed when they could levy. This

provision was for the benefit of the taxpayer, and they could not levy at any other time. R. S., secs. 1225, 6879, 6884, 6881 ; Cooley on Taxation, 215–217 ; *Railroad v. Bearrs*, 39 Ind. 398 ; *Mix v. People*, 72 Ill. 241 ; *Corbett v. Bradley*, 7 Md. 106 ; *Sandwich v. Fish*, 2 Gray, 298 ; *Alger v. Curry*, 38 Vt. 382 ; *Comr's v. Carter*, 2 Kan. 128 ; *Clark v. Noblesville*, 44 Ind. 855. (5) The collector had no warrant for the seizure. The pretended railroad tax-book was made out by the deputy county clerk six months before any levy had ever been attempted to be made, and of this fact defendant was apprised. R. S., sec. 6881 ; *Warrensburg v. Miller*, 77 Mo. 60 ; Cooley on Taxation, 292 ; *Marion Co. v. Barker*, 25 Kans. 260 ; Blackwell on Tax Titles [2 Ed.] 255. (6) There could be no estoppel. Power could only be conferred upon the county clerk by legislative grant, otherwise its acts would be void. No one can be estopped from denying the jurisdiction or power of anybody to act in any given matter. The facts in this case were always known to defendant. He was misled in nothing. He was injured in no way. He was not induced to change his attitude in any manner, and in fact all the illegal steps complained of, save one alone, had been taken long before the conversation in question. The attorney was not a person whose acts were binding upon the company. *Burke v. Adams*, 80 Mo. 514 ; *Moberly v. Railroad*, 74 Mo. 167 ; *Acton v. Dooley*, 74 Mo. 67 ; Bigelow on Estoppel, 438. (7) Injunction was the proper remedy. *Valle v. Ziegler*, 84 Mo. 218 ; *Mower v. Heferstine*, 80 Mo. 23 ; *Ewing v. Board, etc.*, 72 Mo. 436 ; *Ranney v. Bader*, 67 Mo. 476 ; *Overall v. Ruenzi*, 67 Mo. 206 ; *Rubey v. Shane*, 54 Mo. 207 ; *Newmeyer v. Railroad*, 52 Mo. 81.

*Nixon & Quinn* and *G. W. Bradfield* for respondent.

SHERWOOD, J.—In September, 1883, the citizens of Laclede county, desiring to raise a fund with which to construct a courthouse, presented to the county court a petition asking for an election to be held for the purpose of voting upon a proposition to incur an indebtedness of the county for such purpose. The order was made in September, and the election held in November. The order for this election did not specify the amount of indebtedness which it was proposed to incur, nor was it specified in the notice thereof which was given as required by law, or in the ballots used by the electors participating in the election.

At the December term, 1883, of the county court, it was ordered by the court that a levy of thirty cents on the one hundred dollars valuation be made for three successive years for the purpose of raising funds to erect a courthouse. But no indebtedness therefor was ever incurred. On June 4, 1884, the county court of Laclede county made the regular annual order levying taxes upon all property other than railroads.

In July, 1884, John Kellerman, who was a deputy in the county clerk's office, without any order or authorization by the county court, made out a pretended railroad tax-book and extended thereon taxes against the property of appellant at such rate as he was assured by the county officers would be paid by them, and after doing so delivered the same to the collector.

In the following December, the representative of plaintiff having gone to Laclede county for the purpose of paying such taxes as were due, discovered that no order of the county court levying taxes against its property had ever been made. Whereupon a special session of the county court was called, which, on the nineteenth of December, levied taxes against the plaintiff for state, county, school and municipal purposes, and among the other taxes levied was one of thirty cents on the one hundred dollars valuation as a "court-house tax," and

which was in addition to and in excess of the regular authorized lévy of fifty cents on the one hundred dollars valuation for county purposes. . All taxes other than the one last named were paid by the company immediately after the levy was made, and payment of the latter refused. The collector, defendant here, was repeatedly notified that the tax was unconstitutional, illegal and void.

On the sixteenth day of July, 1885, the plaintiff owned in Laclede county more than two thousand acres of land ; it had piled upon its right of way through the county a great number of ties ; was possessed of considerable personal property situated in said county, and had standing upon its side-tracks at Lebanon empty cars worth from three to ten thousand dollars. Notwithstanding the presence of this property, which could have been levied upon by defendant, he, by the order and direction of the county court and his attorneys herein, seized a freight train loaded with live stock and perishable property, chained the same to the track and detained it from ten o'clock in the morning until five o'clock of the afternoon of the same day, causing the entire movement of trains on plaintiff's road to be demoralized, great loss to ensue to it and its patrons, and much business to be diverted from its road at competing points. Severe shrinkage in value of the live stock in transit, and material injury to perishable property was occasioned by reason of the unusual detention. Plaintiff wired the defendant that if he would release the perishable property held by him it would run to Lebanon and turn over $50,000 worth of empty cars in lieu thereof. This was refused. But at five o'clock in the afternoon of the seizure, the defendant turned over to plaintiff the train in question, upon the latter giving to the former a delivery bond by which it was agreed that the same should be restored before the day of sale, which had been fixed for the twenty-first day of July, 1885,

and previous to which day the railway company, in compliance with its bond, did restore the train to the defendant. After which time, and on the twentieth day of July following, it filed its petition herein asking for an injunction, that the tax be declared illegal, and that it have and recover all the damages which it had suffered by reason of the unlawful detention aforesaid. A temporary injunction was granted, and at the August term, 1887, the case was by agreement heard upon the motion to dissolve the temporary injunction, and also upon its merits, at the same time, when the court dissolved the temporary injunction, dismissed the bill and rendered judgment against the company for costs, from which it has appealed to this court.

I. In the case at bar, as already stated, the plaintiff sought to enjoin the sale of its property, which the defendant had seized and levied on under and by virtue of the tax-book, delivered to him as the collector of Laclede county. Such a tax-book, when properly authenticated, is the warrant under which the collector proceeds in the collection of taxes ; but the tax-book in this instance was not authenticated by the signature of the county clerk and the seal of his court, and consequently afforded the defendant no authority or protection for his acts. 2 R. S. secs. 6723, 6744, 6754. Hence, he must be regarded as a trespasser *ab initio*. *Howard v. Heck*, 88 Mo. 456 ; *Ewart v. Davis*, 76 Mo. 129 ; *State ex rel. v. Cook*, 82 Mo. 185 ; *Town of Warrensburg ex rel. v. Miller*, 77 Mo. 56, and cases cited.

II. The admitted facts in this case show that the receipt from the auditor of the certificate of the action of the board of equalization, etc., under the provisions of section 6879, was received by the clerk July 28, 1884, and no levy of taxes was made by the county court as required by that section, but the deputy county clerk, *of his own head*, in July or August, 1884, during vacation, made out the railroad tax-book already mentioned,

and extended the taxes thereon, and this was the only book made out or delivered to the collector, the deputy county clerk, obtaining his rates and his *data* for that purpose from the order of the county court, made in June, 1884, levying taxes on the *general property* of the county. This action of the official mentioned, it is scarcely necessary to say, was wholly unwarranted, and at war with the plain provisions of sections 6879 and 6881, of the revenue law. Whenever, by legislative enactment, power is confided to a particular person or tribunal to perform specified acts, especially acts relating to the exercise of the important power of taxation, such legislative enactment is *mandatory* in its nature; its conditions must be strictly observed, and such power, in order to its validity, must be exercised and exercised only by the person or tribunal upon whom or on which it is in terms confided. This doctrine is recognized everywhere, and disputed nowhere.

The ruling of this court made in a case virtually identical with that at bar is decisive of the question here at issue. Thus, in *City of Kansas v. Railroad*, 81 Mo. 285, it is said : " The clerk is not the county court, and when the county court is required, as a judicial tribunal, to do an act, the record must show that it was done by the court, and the clerk, neither in term nor in vacation of court, can perform it. ' The tax, of course, must be levied by the tribunal or person to whom the power is delegated.' Blackwell on Tax Titles ( 2 Ed.) 255 ; Dillon on Mun. Corp. ( 2 Ed.) 610. ' The power to tax is a high governmental power * * * and when the legislature grants that high power to another tribunal, it can only be exercised in strict conformity to the terms in which the power is granted and a departure in any material part will be fatal to the attempt to exercise it.' *Campbell County Ct. v. Taylor*, 8 Bush, 206, 208 ; *Westfall v. Preston*, 49 N. Y. 353 ; *Beckwith v. English*, 51 Ill. 147. In this case there was no levy of

the tax whatever. The clerk certified the amount of taxes due, but it clearly appears, is conceded, that the county court made no levy of the taxes in question. This is the testimony of the clerk of the county court of Jackson county. This is not a mere technical objection to the proceedings, but is substantial." To the same effect, see *Board of Commissioners v. Barker*, 25 Kan. 258; Cooley on Taxation, 292; *Town of Warrensburg ex rel. v. Miller*, 77 Mo. 56.

The tax-book, therefore, which was delivered to the collector, constituted no warrant for the seizure which he made, and he was informed of this before he assumed to act; and the manner of his action, as already detailed in the foregoing statement of the case, smacks strongly of an oppressive exercise of official authority, even conceding such authority to be legitimate.

III. But an objection has been urged to the validity of the court-house tax, which is the only one remaining unpaid on plaintiff's list. Section 12 of article 10, of the constitution, is as follows: "No county * * * shall be allowed to become indebted in any manner, or for any purpose, to an amount exceeding in any year the income and revenue provided for such year, without the assent of two-thirds of the voters thereof voting at an election to be held for that purpose; nor in cases requiring such assent shall any indebtedness be allowed to be incurred to an amount including existing indebtedness, in the aggregate, exceeding five per centum on the value of the taxable property therein. * * * *Provided*, that with such assent any county may be allowed to become indebted to a larger amount for the erection of a courthouse or jail. *And, provided further*, that any county * * * incurring any indebtedness, requiring the assent of the voters as aforesaid, shall, before or at the time of doing so, provide for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to

constitute a sinking fund for the payment of the principal thereof within twenty years from the time of contracting the same.''

It is quite plain from these organic provisions that, in order to obtain the necessary assent of the voters of a county to the incurring of an indebtedness, they must be *informed of the amount of such indebtedness*, in order to vote intelligently upon the question presented, for otherwise they vote in the dark. In the present case, no such amount, no sum at all as requisite for the purpose of building a courthouse, was proposed to, or passed upon by the voters who voted at the election called. Without the amount of the debt were known, it would be impossible to designate the amount of the tax necessary to be raised by annual taxation "sufficient to pay the interest on such indebtedness as it falls due, and to constitute a sinking fund for the payment of the principal thereof within twenty years from the time of contracting the same." The act of 1883, p. 147, which amends sections 6808, 6810, bears out the same idea, of the necessity for specifying the amount of the debt to be incurred; and section 6809, which remains untouched by the act of 1883, requires twenty days notice of the election to be held under its terms, to be published, etc., and that "such notice shall specify the amount of the debt, the object and purposes thereof, the rate of the increase of the tax levy," etc. None of the conditions specified in the organic or statutory law before mentioned were observed or obeyed, neither in the order of the county court calling the election, the notice of the same, the ballots cast thereat, nor in the order of the county court made thereafter, in this, that the amount of the indebtedness to be incurred is nowhere specified.

The levying of a tax being the exercise of a high governmental power, there must be a distinct authority of law for every levy upon the people under that power;

taxes therefore cannot be levied by counties or munici-
palities, except for the very purpose prescribed by law,
and in the manner and under the conditions prescribed
by law.   Cooley on Taxation ( 2 Ed. ) pp. 324, 348, and
cas. cit.   There is no such thing as an implied power in
a county court to levy a tax.   Their authority to do
this springs into being only upon a strict observance of
the power expressly conferred upon them by existing
laws.   *State ex rel. v. Shortridge*, 56 Mo. 126.   In *State
ex rel. v. Saline Co.*, 45 Mo. 242, under the provisions of
a law allowing a subscription to the stock of a railroad
company, where the amount to be subscribed was "speci-
fied," and this was not done at the time the subscription
was voted, the vote was held invalid, and the county
court, in consequence of such lack, powerless in the
premises.   So, also, in Indiana, under a similar statute,
the petition did not "specify the amount to be appro-
priated," nor did the notice to the taxpayers do this,
and it was ruled that the election was invalid and con-
ferred no power on the county commissioners to levy
the tax, notwithstanding that the petition asked a cer-
tain per cent. to be levied on the taxable property of the
township, the supreme court remarking, in substance,
that the maxim *id certum*, etc., would not apply to such
a case, that the legislature did not intend that the tax-
payers, before voting, should have to go to the trouble of
ascertaining the amount of the taxables, and then make
a calculation to ascertain the amount to be assessed ; but
that the amount was imperatively required to be speci-
fied ; that nothing short of this would answer, as the
taxpayers were entitled to know the extent of the
burden they were asked to assume.   *Railroad v. Bearss*,
39 Ind. 598 ; *Railroad v. Wells*, 39 Ind. 539, and cas.
cit.   And so the tax levied in those cases, and all the
proceedings connected therewith, were adjudged void
and of no effect.   Applying the authorities cited and the
reasons which they give, to the tax proceedings now

under consideration, they must also be held fatally lacking in all those essentials necessary to the creation of a valid tax.

IV.   No estoppel can be invoked against the plaintiff in this cause.   The attorney employed to go out to Lebanon had no authority but to pay the legal and valid taxes of the company, and therefore could not bind his employer beyond the power which had been conferred upon him.   And it was clearly shown that at the time the statement was made to the collector about paying the taxes of the company, the attorney was unaware of the illegality of the court-house tax.   Besides, the collector, shortly thereafter, was fully informed of the true situation of affairs and of the company's intention not to pay the tax, and his situation was not altered in consequence of anything said to him.   Bigelow on Est. 438, and cas. cit.

V.   Now as to the remedy:   Numerous decisions of this court attest that the remedy plaintiff asks is the proper one in cases of this sort.   *Valle v. Ziegler*, 84 Mo 214, and cas. cit. ; *Book v. Earl*, 87 Mo. 246 ; Cooley on Taxation (2 Ed.) 763, and cas. cit.

The judgment will be reversed and the cause remanded with directions to proceed in conformity with this opinion.   All concur.