BURKE, Plaintiff in Error, v. BROWN et al.

In Banc, February 21, 1899.

1. **Tax Sales:** WHERE TAX BOOKS ARE UNAUTHENTICATED. When a tax collector sold lands for taxes under section 65, page 1171, 2 Wagner Statutes of 1872, relying upon tax books which had not been authenticated by the seal of the county court, he was proceeding without authority of law, and his sales were, in effect, the same as if he himself, of his own volition, had made them. And one who purchases at such sale, and afterward, until his deed is set aside by the Supreme Court, pays taxes charged upon like unauthenticated tax books, can not recover them from the successful claimant, in a suit founded on section 219, 2 Wagner's Statutes, page 1206. Nor can his assignee recover them. Such taxes were mere illegal and arbitrary exactions, which the State was not authorized to collect and which the landowner was under no obligations to pay. The purchaser had a lien against the land under such statute for all taxes paid by him which were legally due at the time of the sale or payment, but unless the tax books, upon which the sale was made or upon which the taxes afterward paid by him were charged, were authenticated by the seal of the county court, no taxes were legally due, and he had no lien.

2. ————: RIGHTS OF PURCHASER: SUBROGATION. The rights of the purchaser at a tax sale, and of one who has thereafter paid taxes charged against the land, can not be superior to those of the State. If the State had no valid charge against the land, neither has the party who has become subrogated to its claims.

*Transferred from Kansas City Court of Appeals.*

AFFIRMED.

JOHN COSGROVE for plaintiff in error.

(1) The statute under consideration asserts a broad equity. It was enacted to afford persons who, to enable the State to collect its revenue, purchased lands at tax sales, a

remedy to be reimbursed the money paid to relieve the delinquent land from its burdens of taxation. It was made for just such cases as this. The lands of defendants unquestionably were subject to taxation. No taxes were paid thereon for several years by defendants. The plaintiff's assignor paid these taxes from 1872 to 1885, and plaintiff is entitled, under the statute, to have the amount so paid declared a lien upon the land, which was for more than twelve years, relieved by his money from its burden of taxation. Defendants can not rightfully complain, if they are thus required to discharge their share of the public burdens, although the sale of the lands, by the collector of Moniteau county was invalid, and passed no title to the purchaser. Allen v. Buckley, 94 Mo. 158; Bingham v. Birmingham, 103 Mo. 345; Pitkin v. Reibel, 104 Mo. 505; Cooley on Taxation, 374; Pitkin v. Shacklett, 106 Mo. 571; Pitkin v. Miller, 106 Mo. 557; Gregg v. Jesberg, 113 Mo. 34; Stewart v. Corbin, 38 Ia. 571. (2) William G. Howard who paid the taxes on the land, was not a volunteer. He paid them to protect his supposed title of property bought at a sale, which the circuit court of Moniteau county held vested in him a perfect title. If the Supreme Court had affirmed the judgment of the trial court, then the taxes paid by Howard would have been paid for his own benefit, and he would have no claim on any one to have them repaid. The rights of plaintiff are based upon the fact that the title of Howard has failed. Carter v. Phelps, 49 Mo. App. 319; Allen v. White, 98 Mo. 62. (3) The plaintiff could have obtained the relief he seeks in this proceeding by the Supreme Court, had he applied to that court. therefor, but the right of action is preserved to him by statute.

DRAFFEN & WILLIAMS for defendants in error.

(1) (a) The plaintiff is precluded from prosecuting this action by the final judgment rendered by the Supreme

Court, in the suit by the holder of the tax deed for the recovery of the land. The statute relied upon by plaintiff provides, that if the holder of the tax deed be defeated in an action for the recovery of the land, the successful claimant shall be adjudged to pay him the taxes, etc., paid by him. This must be adjudged in the suit for the recovery of the land. Only one trial seems to be contemplated. Pitkin v. Reibel, 104 Mo. 505; White v. Shell, 84 Mo. 569; Pitkin v. Shacklett, 117 Mo. 547. (b) The plaintiff in fact concedes that Howard might have had the matters involved in this case determined in that suit. The final judgment in that case is an adjudication against the plaintiff's claim in this suit. The pleadings and evidence then before the court authorized a determination of the rights asserted in the present action. 2 Black on Judg., sec. 731; White v. Van Houton, 51 Mo. 577; Chouteau v. Gibson, 76 Mo. 38; Robinson v. Boyd, 23 S. W. Rep. 72; Vail v. Rinehart, 4 N. E. Rep. 218; Stump v. Hornback, 109 Mo. 272; Ketchum v. Christman, 30 S. W. Rep. 312; Givens v. Thompson, 110 Mo. 432; Offutt v. John, 8 Mo. 120. (2) (a) The so-called taxes paid by plaintiff's assignor were invalid; constituted no lien upon defendant's land; and defendant was under no obligation to pay them. None of the alleged tax books were certified by the county clerk or authenticated in any manner. They were merely unofficial lists. Howard v. Heck, 88 Mo. 456; State ex rel. v. Cook, 82 Mo. 185; Pike v. Martindale, 91 Mo. 268. (b) The statute relied upon by the plaintiff only applies to cases where the State has acquired a valid lien upon the land for its taxes, but, by some irregularity in the tax proceedings, the purchaser fails to acquire a good title. It can have no application where no tax was ever levied, assessment made, or tax book delivered to the collector. Barber v. Evans, 27 Minn. 92; Tierney v. Union Lumber Co., 47 Wis. 248; Roberts v. Deeds, 57 Ia. 326; Philleo v. Hiles, 42 Wis. 527; Early v. Whittingham,

43 Ia. 162; Harper v. Roe, 53 Cal. 233; Pitkin v. Riebel, 104 Mo. 505.

John Cosgrove for plaintiff in error in reply.

The legislative intent was to encourage persons to purchase at sales for delinquent taxes, where the owner thereof had failed or neglected to discharge his duty to the State. The true test is, did the payment of taxes by the purchaser at the tax sale made by the collector of Moniteau county relieve the land from any taxes for the years for which it was delinquent? If the State and county could not again legally assess it for those years it is manifest that the plaintiff or his assignor has paid a claim to the State that morally and legally should have been paid by the defendants. It has been held in Packard v. New Limerick, 34 Me. 266, that taxes once paid can not be again collected, although illegally collected. . See, also, Bank v. Lewis, 64 Miss. 734; Coe v. Tarwell, 24 Kan. 566.

BURGESS, J.—This case was in the first instance taken by writ of error to the Kansas City Court of Appeals where an opinion was delivered by Judge Gill, concurred in by the other members of the court, affirming the judgment of the trial court. A motion was then filed by plaintiff for a rehearing, one of the grounds being that the cause involves the construction of the revenue law. The motion was overruled, and the case certified to this court upon that ground.

The opinion of the court of appeals is as follows:

"Gill, J.—In October, 1876, the collector of Moniteau county sold certain lands in said county, belonging to defendant Brown, for the taxes of 1873 and 1875, and one Howard became the purchaser, to whom a tax deed was made. Thereafter Howard instituted an action of eject-

ment to recover the land. He was successful in the circuit court, but on appeal, the Supreme Court declared the tax sale invalid and reversed the judgment, without remanding. [Howard v. Heck, 88 Mo. 456.] In March, 1888, Howard brought this suit, substantially alleging in his petition, that at the date of his purchase at the tax sale and subsequently, he paid taxes on the land for the years 1871 to 1885, inclusive. For the amount of these, with penalties and interest, he prayed that he might have judgment, which should be declared a lien on the lands, and that they be sold for the payment thereof, etc. The allegations of the petition were put in issue by defendant's answer. During the pendency of the action, and before the trial, Howard's interest therein was transferred to Burke, who was substituted as plaintiff.

"At the trial the facts were practically agreed on. It stands admitted that plaintiff's assignor (Howard) paid certain charges appearing against the land and designated as the State and county taxes for the years 1871 to 1885, inclusive. Among other matters of defense stated in the agreed case, appears the following:

" 'The defendants then introduced the real estate tax books from 1871 to 1886 inclusive, being all of the years for which said Howard paid taxes on said land, and it is also admitted for the purpose of this appeal, that said books were not certified to by the clerk of the county court, and that they did not contain a certificate that the same was a true copy of the assessor's book of the year of which it is purported to be the tax book, and that said books are not authenticated by the seal of the county court, or the certificate of the clerk of said court, as required by sec. 65, 2 W. S. 1872, p. 1171, and were not authenticated in any manner; that these were the only books upon which the payment of taxes was made by the plaintiff's assignor.'

"As further indicating the basis of plaintiff's claim, we append an instruction, which he asked and the court declined to give:

" 'If the court believes from the evidence that the lands described in plaintiff's amended petition were sold on the 2d day of October, 1876, by the collector of the revenue of the county of Moniteau, for the purpose of collecting the taxes then due and unpaid and which had been assessed against said land for the years 1872, 1873 and 1874, or either of said years, and that the said land was purchased at said sale by William G. Howard, and that he then and there paid to said collectors the said taxes, and afterwards received a deed from the collector of said county for said land, and that after the said Howard received his said deed from the collector of the said county, he paid all of the taxes assessed against said land for the subsequent years, up to and including those of 1885, and that the said Howard, to wit, in the year 1881, commenced suit in ejectment in the circuit court of said Moniteau county, against defendant Heck; and that afterwards the defendant Brown became a party defendant therein; and that judgment was rendered in the circuit court of said Moniteau county, in favor of the plaintiff therein, adjudging and decreeing that he was entitled to the possession of said land, and that an appeal was taken from said judgment to the Supreme Court of this State, where the said judgment was reversed, and that since then, to wit, on the 19th day of May, 1892, the said Howard sold, assigned, transferred and conveyed all his right, title, claim and interest in and to said land and the money paid to said collectors of said county of Moniteau, to the plaintiff, Edmund Burke, then the said Burke is entitled to recover in this case the amount of money so paid by the said Howard, together with all interest, penalties and costs given by law, unless the court shall further believe from the evidence that said land was not subject to taxation, or that the taxes, for

which said land was sold, were paid  before the same was sold, or that it had been redeemed according to law, and that the amount so due the plaintiff is a lien upon said land so bought at said sale by the said Howard.'

"From a judgment in defendant's favor, plaintiff has brought the case here by writ of error.

"I.    As will be seen from the foregoing statement, this is an action by the assignee of a defeated holder of a tax title, to recover certain alleged taxes which the assignor paid on the land, at and subsequent to his purchase.    The point raised is, whether such an action can be defeated by showing that there was no legal levy or assessment of the taxes which the holder of the alleged tax title assumed to pay.    The rights of the parties are governed by the revenue laws of 1872; plaintiff basing his right to recover on section 219, 2 Wagner's Stat., p. 1206, the latter clause thereof reading as follows:

" 'And if the holder of a tax deed, or the party claiming under him by virtue of a tax deed, be defeated in an action by or against him for the recovery of the land sold, the successful claimant shall be adjudged to pay such party claiming under the tax deed, except in cases where the land was not subject to taxation, or the taxes for which the same was sold were paid before the sale, or it has been redeemed according to law, the full amount of all taxes paid by the tax purchaser on such lands at the time of the purchase, and all subsequent taxes paid by him, together with the amount of the redemption money provided for by law, and interest on the whole amount of such taxes from the time of the payment thereof, at the rate of 10 per cent per annum; which judgment shall be a lien upon the real estate in controversy, and may be enforced by execution, as in other cases of judgments and decrees of such court.'

"In the brief of defendant's counsel, it is contended that plaintiff's alleged cause of action is barred by the final

judgment of the Supreme Court in Howard v. Heck, 88 Mo. 456, wherein plaintiff was turned away with an adverse judgment; that any rights he might have for taxes paid, ought properly to have been determined in that suit, and that therefore plaintiff ought not to be allowed to prosecute this independent action for a matter which legitimately came within the bounds of that case.   We have thought it unnecessary to pass upon that question, since, at all events, we hold that the plaintiff is not entitled to recover—even admitting that he has proceeded in the proper manner.

"Coming back then to the more important question, the defendants contend that, notwithstanding the above quoted statutory provision, they defeat plaintiff's alleged right to enforce his claim, if they show that no tax was ever legally levied or charged on their land, for.the years 1871 to 1885 inclusive.  The agreed facts clearly show that there was no valid tax levy for these years.  In perfecting the tax levy, assessment and State's lien, the law then provided, that:   'As soon as the assessor's book  shall be corrected and adjusted, the clerk of the county court shall  within 90 days thereafter, make a fair copy thereof, with the taxes extended therein, authenticated by the seal of the court, for the use of the collector  .  .  .  and such copy of the assessor's book shall be called "the tax book.' " ˙  [Sec. 65, p. 1171, 2 Wag. Stat.] It is admitted now that there was an entire omission, in all the years for which these taxes were paid, to authenticate the tax books, as required by the foregoing section; and the same remarks, therefore, apply here as in Howard v. Heck, *supra*, where it was said to 'follow from these premises that the so-called tax books, not being authenticated in any manner whatever, can not be regarded in any other light than mere unofficial lists, bearing on their face none of the insignia of authority.' It must be conceded, then, that when the tax collector assumed to act upon these unofficial lists, he was proceeding without authority of law,

and his acts were, in effect, the same as if he himself, of his own volition, had made such lists. He has no 'tax books,' properly so-called; nor were these several amounts, which the collector got from Howard, valid and legal taxes. They were mere illegal exactions, to which the State was not entitled and which the landowner was under no obligation to pay. And if then the land was not charged with a lien in favor of the State in the first instance, on what show of reason can it be said that the State's assignee has a lien? If these illegal and arbitrary charges were non-collectible and non-enforcible by the State, how can it be claimed that they became legal and valid charges by force of a mere assignment to another party? In treating of this subject, Mr. Black, in his work on tax titles, uses the following reasonable language: 'A mere purchase of land at a tax sale gives no lien enforcible in equity, for the reimbursement of the money paid. But where the tax title proves defective, the statutes of several States create a lien in favor of the purchaser for the amount of the price paid. There is, however, a limit to the power of the legislature to provide for liens of this character. It is only in cases where the tax was justly and equitably chargeable upon the owner of the land, and where the title fails only through some irregularity or omission, that its payment can be enforced in this indirect manner. If the circumstances were such that the owner never was under obligation to pay the sum charged to him, so that no enforcible lien attached in favor of the State, it seems too plain for argument that no statute can place the purchaser in the position of holding a valid lien on the land. Hence, if the tax was vicious in its inception, because laid for an unlawful purpose, or for other reasons, there is and can be no lien for the purchaser of the illusory title.' [Black on Tax Titles, sec. 266, also, secs. 267, 229.]

"Judge Cooley says: 'The legislature can have no more authority to compel the landowner to pay a lawless

exaction to a third person than it has to compel a like pay-
ment to the State directly. . . . The rule *caveat
emptor* applies to the purchaser. He takes all the risks of
his purchase, and if he finds in any case that he has secured
neither the title he bid for, nor any equitable claim against
the owner, the State may, if it see fit, make reparation itself;
but it has no more authority to compel the owner of the land
to do so than to exercise the like compulsion against any
other person.' [Cooley on Taxation (1 Ed.), 375.]

"In Minnesota there is a statute for the relief of the
tax purchaser, similar to our own. In deciding a case in-
volving a question of similar import to this, the Supreme
Court, referring to this statute, uses this language: 'Its
provisions are limited to cases where the taxes have been
legally assessed and levied, and have become due and delin-
quent, but, owing to some irregularity in the proceedings
connected with the making of the sales, on the part of some
officer having a duty to perform in relation thereto, the sales
are rendered invalid. In every such case, the purchaser
acquires a lien upon the property for his purchase money,
to the extent of the taxes, penalty and interest legally due
against the land at the time of the sale, as well as for all
taxes subsequently paid thereon by him; but in no other
case is he entitled to any lien under the provisions of this
section.' In that case, the said taxes were not levied and
assessed according to law, and such departure (says the
court) 'made both the assessment and levy wholly illegal.
. . . The case therefore does not come within the pro-
visions of section 142, above quoted, for, as there had been
no valid assessment and levy, there were no taxes legally
due and delinquent from the defendant, on account of the
land, at the time of the alleged sale.' And further, it is
said: 'The statement that there was no evidence tending
to show that said taxes were arbitrary, unjust, or vicious,
would seem to be somewhat at variance with the preceding

portion of the finding; for, under our laws, the only basis of just taxation is a valid assessment of property in the first instance, and if this is wanting, or if the levy which is made is not in susbtantial conformity with the requirements of the statute, the tax is necessarily "unjust and vicious;" and the fact that it may have been levied for a public purpose, or that all other taxes which were levied at the same time, were levied in a like manner, would make it none the less illegal.' In short, it was there held, that a purchaser of real property at a tax sale, which proves to be invalid by reason of an illegality in the assessment of the property and the levy of the tax, acquires no lien upon the property for the amount of the alleged tax; and that the provisions of the Minnesota statute (which is similar to that of Missouri) has no application to cases of tax sales, invalid because of void levy and assessment. [Barber v. Evans, 27 Minn. 92; to same effect, see, also, Philleo v. Hiles, 42 Wis. 527; Marsh v. Supervisors, Id. 502; Tierney v. Union Lumbering Co., 47 Wis. 248; Roberts v. Deeds, 57 Iowa 320.]

"In these Wisconsin cases, the taxes were held invalid and such as the landowner was not bound to pay to the holder of the tax deed, because the assessor's lists were not authenticated, as required by the statute. The tax purchaser was held entitled only to taxes legally assessed, and that this failure to properly authenticate the tax books went to the very groundwork of the tax charge. Says the court in Philleo v. Hiles, *supra:* 'To require prepayment of the amount of the tax sale, in such a case, would be to create a lien on land, not by a tax, but by a tax sale, where there had been no tax.'

"In our opinion, it was not the purpose of said section 219 (on which plaintiff relies for recovery) arbitrarily to fix a liability upon the landowner, which was not a legal charge under the revenue laws; nor was it intended to deny him any defenses except those named, to wit, that the land

was not taxable, that the taxes had been paid, or that the land had been redeemed.    There is nothing in the statute that gives fair color to so unjust a claim as that the land-owner should be bound to pay every pretended charge which the tax purchaser thought proper to pay, whether such charge had any legal basis or not.    'The statute was evidently designed to have an operation in the nature of an equitable subrogation to the liens on the land held by the State.'    [Pitkin v. Reibel, 104 Mo. 510.]    Its purpose was to place the unsuccessful holder of the tax title (who had been denied recovery of the land because of some irregularity or informality in the tax sale or tax deed), in possession of the State's rights, and with power to enforce its lien through a judgment of the court.   And as the stream can not raise higher than its source, so the rights of the tax purchaser can not be superior to those of the State.    If the State had no valid charge on the land, neither has the party who has become subrogated to its claim.

"Thus stands the plaintiff.    His assignor took all the State had, but no more.    These pretended charges, while belonging to the State, were invalid and non-enforcible, and they remain so in the hands of the plaintiff.

"The judgment is for the right party and will be affirmed.    All concur."

In this cause, transferred to the Supreme Court from the Kansas City Court of Appeals, we approve the opinion rendered by that court, and affirm the judgment of the circuit court.

All concur, except MARSHALL, J., absent.